**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **WEST PACIFIC ELECTRIC COMPANY CORPORATION,** | **1:18-CV-00166 LJO BAM** |
| **Plaintiff,** | **ORDER DENYING IN PART DRAGADOS/FLATIRON'S MOTION TO DISMISS AND REQUESTING SUPPLEMENTAL BRIEFING** |
| **v.** | |
| **DRAGADOS/FLATIRON, a joint venture, *et al*.,** | |
| **Defendants.** | |

## I. <u>PRELIMINARY STATEMENT TO PARTIES AND COUNSEL</u>

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno

Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. **INTRODUCTION**

Defendant, a joint venture between Dragados USA, Inc., and Flatiron West, Inc. ("DFJV"), moves to dismiss the first through fourth causes of action in the Complaint, brought by Plaintiff West Pacific Electric Company, Inc. ("WPEC"). ECF No. 18. DFJV also requests judicial notice of certain documents. ECF No. 18-2. Plaintiff has opposed the motion to dismiss, ECF No. 20, and objects to the request for judicial notice. ECF No. 20-1. Defendants filed a reply. ECF No. 21. The Court took the matter under submission on the papers pursuant to Local Rule 230(g). ECF No. 23. For the reasons set forth below, the motion to dismiss is DENIED IN PART, and the parties are directed to submit supplemental briefing on certain issues.

## III. **BACKGROUND**

This case concerns WPEC's work on the California High Speed Rail Project (the "Project"). In 2015, DFJV became the prime contractor on the Project pursuant to a prime contract ("Prime Contract") between DFJV and the California High Speed Rail Authority ("CHSRA"), whereby DFJV agreed to design and build a section of the Project to extend from Fresno to Bakersfield. ECF No. 1 ("Compl.") at ¶ 16. On October 25, 2016, WPEC and DFJV entered into a written subcontract ("Subcontract") pursuant to which WPEC agreed to complete installation of certain telecommunication infrastructure for five specific "Reaches" of the Project. *Id*. at ¶ 17. The Subcontract required WPEC to provide a performance bond in the amount of 50% of the contract price and a payment bond in the amount of 100% of the contract price. *Id*. at ¶ 18. It is alleged that WPEC, which has limited bonding capacity, agreed to provide such bonding on the basis that the entire scope of work was to be performed within the expressed 90 days set forth in a schedule attached to the Subcontract, such that WPEC's capacity for bonding (and concomitant ability to seek and obtain other work requiring bonds) would not be impaired

for a significant amount of time. *See id.* at ¶ 19; *see also* ECF No. 1-1 (Subcontract), Attachment C at 7.

Plaintiff's first cause of action is for rescission of the Subcontract based upon fraud. This claim points out that the Prime Contract contains a provision that precludes construction of any portion of the Project until all necessary rights of access for that portion of the Project have been obtained. Compl. at ¶ 21. CHSRA was responsible for acquiring all relevant rights of way ("ROW") for the Project. *See id.* at ¶¶ 23-24. Plaintiff alleges that, prior to entering into the Subcontract with WPEC, DFJV had been notified by CHSRA that CHSRA had not acquired all the rights of way necessary for DFJV to complete its work on the Subcontract and that DFJV failed to disclose to WPEC that CHSRA had not acquired the necessary rights of way "to permit WPEC to begin, let alone complete, its work within 90 days of executing the Subcontract." Compl. at ¶ 23. In addition, WPEC alleges that DFJV knew at the time it executed the Subcontract that portions of the DFJV-controlled design pertaining to WPEC's work Reaches "were either already in the process of being revised, or would need to be revised, and that such revisions would delay the delivery of the rights of way by CHSRA due to the need to modify/alter the limits of the various rights of way needed." *Id.* at ¶ 24. WPEC alleges that had it possessed or known of this information, WPEC would not have executed the Subcontract. *Id.* at ¶ 28.

The second cause of action is for rescission of the contract based upon mistake of fact, including Plaintiff's belief that all ROW for the parcels on which Plaintiff's work would be performed had been acquired, that no work could begin on a portion of the Project until all rights of way had been obtained, and that the design was not in flux such that such chances might affect the rights of way obtained or still needing to be obtained. *Id.* at ¶ 32.

The third cause of action is for fraudulent concealment and alleges that, while the Subcontract provides that WPEC's work was to be completed within 90 days of execution of the Subcontract, DFJV intentionally concealed the fact that the rights of way for the Reaches on which WPEC would be required to work had yet to be acquired by CHSRA and that portions of the design pertaining to WPEC's work were in the process of being revised or would need to be revised in ways that would

3

materially impact the acquisition of the necessary rights of way. *Id.* at ¶ 35.

The fourth cause of action alleges a violation of California's Unfair Practices Act, Cal. Bus. Prof. Code § 17200 *et seq.*, based upon the conduct alleged in the other causes of action. *Id.* at ¶¶ 41-48.

The remaining causes of action (fifth through eleventh) are not challenged in the motion to dismiss. *See* ECF No. 18 at 2.

## IV. STANDARDS OF DECISION

Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting [the] fraud [.]" Fed. R. Civ. P. 9(b). This heightened pleading standard requires the party to do more than simply identify a transaction and allege in a conclusory manner that the transaction was fraudulent. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds*. Rather, the party must set forth in detail "the who, what, when, where, and how" of the alleged fraudulent conduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The purpose of Rule 9(b) is to protect defendants from factually baseless claims of fraud inasmuch as it is meant to give defendants notice of the claims asserted against them. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). When a party averring fraud fails to meet the heightened pleading standard of Rule 9(b), dismissal of the claim is proper. *See Vess*, 317 F.3d at 1107 ("A motion to dismiss a complaint or claim 'grounded in fraud'

4

1  under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss

2  under Rule 12(b)(6) for failure to state a claim.").

3  # V. ANALYSIS

4  **A.  Fraud Claims.**

5       The elements of fraud under California law are: (1) a misrepresentation (which may include a

6  false representation, concealment, or nondisclosure); (2) knowledge of its falsity; (3) intent to defraud,

7  i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See Lazar v. Super. Ct.*, 12 Cal.

8  4th 631, 638 (1996); *see also In re First Am. Home Buyers Prot. Corp. Class Action Litig.*, 313 F.R.D.

9  578, 603 (S.D. Cal. 2016), *aff'd sub nom. Carrera v. First Am. Home Buyers Prot. Co.*, 702 F. App'x

10  614 (9th Cir. 2017). To establish fraud through nondisclosure or concealment of facts, a plaintiff must

11  prove: (1) defendant concealed or suppressed a material fact; (2) defendant was under a duty to disclose

12  the fact to plaintiff; (3) defendant intentionally concealed or suppressed the fact with the intent to

13  defraud plaintiff; (4) plaintiff was unaware of the fact and would not have acted as he did if he had

14  known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the

15  fact, the plaintiff sustained damage. *See Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162

16  Cal. App. 4th 858, 868 (2008); *see also Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1163 (9th Cir.

17  2012). "There are four circumstances in which nondisclosure or concealment may constitute actionable

18  fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had

19  exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively

20  conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but

21  also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997) (internal

22  quotation omitted); *see also Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1186-87 (2014), *as*

23  *modified on denial of reh'g* (Aug. 13, 2014); *Baggett v. Hewlett–Packard Co.*, 582 F. Supp. 2d 1261,

24  1267-68 (C.D. Cal. 2007) (citing *LiMandri*, 52 Cal. App. 4th at 336). Plaintiff makes clear in its

25  opposition that it is attempting to rely on the second and fourth circumstances described in *LiMandri*.

### a.  Transaction Between the Parties

As the court in *LiMandri* explained, where no fiduciary relationship exists to trigger a disclosure duty, "the other three circumstances in which nondisclosure may be actionable presuppose[ ] the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise. . . . [W]here material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is some relationship between the parties which gives rise to a duty to disclose such known facts." 52 Cal. App. 4th at 336-37 (internal quotation omitted). A relationship between the parties is present if there is "some sort of *transaction* between the parties." *Id*. at 337 (emphasis in original). "Thus, a duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement." *Id*.; *see also Hoffman*, 228 Cal. App. 4th at 1187.

Here, there can be no dispute that a transaction existed between the parties by virtue of the Subcontract between them. Defendants appear to acknowledge in their opposition that the relationship between the parties would be sufficient to constitute a "transaction" under *LiMandri*, and would thereby permit a claim for fraud where facts supporting application of the second, third, or fourth *LiMandri* circumstance were alleged. *See* ECF No. 18-1 at 18.

### b.  Allegations of Active Concealment Not Required

Next, Defendants suggest that for transactions not involving fiduciary relationships, a plaintiff must allege "facts of active concealment." ECF No. 21 at 7. In support of this proposition, Defendants quote *Warner Construction Corp. v. City of Los Angeles*, 2 Cal. 3d 285, 294 (1970), which held that:

> In transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead;[FN5] (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff;[FN6] (3) the defendant actively conceals discovery from the plaintiff.[FN7]

[FN5] Civil Code section 1710, subdivision 3; *Rogers v. Warden* (1942) 20 Cal. 2d 286, 289; *McCue v. Bruce Enterprises, Inc.* (1964) 228 Cal. App. 2d 21[,] 27; *Gillespie v. Ormsby* (1959) 126 Cal. App. 2d 513, 527.

[FN 6] *Lingsch v. Savage* (1963) 213 Cal. App. 2d 729, 735; *Sime v. Malouf* (1949) 95 Cal. App. 2d 82, 100. *Barder v. McClung* (1949) 93 Cal. App.2d 692, 697.

[FN 7] *Herzog v. Capital Co.* (1945) 27 Cal. 2d 349, 353; *Sime v. Malouf*, *supra*., 95 Cal. App. 2d 82, 99; *Williams v. Graham* (1948) 83 Cal. App. 2d 649, 652.

*Id.* (parallel citations omitted). While Defendants' brief quoted this language without the footnotes, the Court includes them here to demonstrate that each of the "instances" mentioned in *Warner* operate independent of one another, as they are drawn from separate lines of authority. So, while active concealment *may* constitute a form of proof in a non-disclosure of material fact case, so may circumstances in which "the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead" or when material "facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff." *Id*. These latter examples are equivalent to the two *LiMandri* circumstances relied upon by Plaintiff in this case.[1] In other words, Plaintiff relies on forms of fraudulent concealment that do not require "active concealment."

### c.    <u>Exclusive Knowledge of Material Facts Not Known to the Plaintiff</u>

WPEC invokes directly the second *LiMandri* circumstance: exclusive knowledge of material facts not known to the plaintiff. Neither party makes any concerted effort to explain the law applicable to such a claim in the context of a construction contract dispute. In general, "[t]he duty to disclose *may*

---

[1] Defendants also quote *Conerly v. Westinghouse Electric Corp.*, 623 F.2d 117, 120 (9th Cir. 1980), for the proposition that a plaintiff must allege facts showing "affirmative conduct" to establish fraudulent concealment. *See* ECF No. 18-1 at 19-20. But, the relevant language from *Conerly* concerned a plaintiff who was attempting to toll the operation of a statute of limitations due to "fraudulent concealment" by the defendants of facts giving rise to the cause of action. *See Conerly*, 623 F.2d at 120. *Conerly* and the cases upon which it relies were not concerned with the tort of fraudulent concealment, but rather a form of fraudulent concealment applicable only to tolling. For the same reason, the Court finds unpersuasive Defendants' contention that Plaintiff's claims fail because they have not alleged due diligence. *See* ECF No. 18-1 at 20-21.

7

arise without any confidential relationship where the defendant alone has knowledge of material facts that are not accessible to the plaintiff." 5 Witkin, Summary 11th Torts § 916 (2017) (emphasis added). "Whether a duty exists in a specific case and the scope of that duty are questions of law to be determined on a case-by-case basis." *Amardeep Garments Indus. Pvt. Ltd. v. Cathay Bank*, No. CV 11-2849 AHM (RZX), 2012 WL 12886849, at *5 (C.D. Cal. Apr. 12, 2012) (citing *Parsons v. Crown Disposal Co.*, 15 Cal. 4th 456, 472 (1997)).

A line of California cases establishes that an "exclusive knowledge" duty exists in the context of real estate transactions. *See Lingsch v. Savage*, 213 Cal. App. 2d 729 (1963); *Barnhouse v. City of Pinole*, 133 Cal. App. 3d 171, 191 (1982), *modified*, *Geernaert v. Mitchell*, 31 Cal. App. 4th 601 (1995). *Lingsch* articulated the elements of a claim for exclusive knowledge fraudulent concealment as follows:

> (1) Nondisclosure by the defendant of facts materially affecting the value or desirability of the property;
> (2) Defendant's knowledge of such facts and of their being unknown to or beyond the reach of the plaintiff;
> (3) Defendant's intention to induce action by the plaintiff;
> (4) Inducement of the plaintiff to act by reason of the nondisclosure and
> (5) Resulting damages.

*Lingsch,* 213 Cal. App. 2d at 738 (internal citations omitted). The duty to disclose based on exclusive knowledge articulated in *Lingsch* is "typically confined to those engaged in a real estate transaction." *Hathaway v. Hathaway*, No. CV 09-1123-GHK (CTX), 2009 WL 10673230, at *5, n.6 (C.D. Cal. Sept. 29, 2009) (citing *Cooper v. Jevne*, 56 Cal. App. 3d 860, 866 (1976) (citing *Lingsch*, 213 Cal. App. 2d at 735-36, for the proposition that "where a real estate broker or agent, representing the seller, knows facts materially affecting the value or the desirability of property offered for sale and these facts are known or accessible only to him and his principal, and the broker or agent also knows that these facts are not known to or within the reach of the diligent attention and observation of the buyer, the broker or agent is under a duty to disclose these facts to the buyer")); *Lesinski v. Blank*, No. B186001, 2007 WL 1544500, at *5 (Cal. Ct. App. May 30, 2007) (suggesting that *Lingsch* arose out of common law duty applicable to sellers of real property); *see also* California Civil Code § 2079(a) (codifying duty of real estate broker to

conduct diligent visual inspection of property offered for sale and to disclose to prospective purchaser all facts that materially affect value or desirability of property); *San Diego Hospice v. Cty. of San Diego*, 31 Cal. App. 4th 1048 (1995) (applying *Lingsch* to dispute over purchase of contaminated real property).

However, cases in California also have applied a disclosure duty based on "exclusive knowledge" in other circumstances. Apart from in the real estate context, the most prominent application has been to insurance providers. In *Wells v. John Hancock Mutual Life Insurance Co.*, 85 Cal. App. 3d 66 (1978), for example, the plaintiff brought suit against an insurer for failing to disclose to the plaintiff that an insurance policy assigned to her as a security interest for a loan had lapsed at the time of assignment. The court in Wells concluded "[w]hen a life insurance company is advised that a policy issued by it has been assigned as security for a loan and acknowledges in writing that it has received a duplicate of such assignment," it is "under a duty to inform the assignee that . . . the policy has lapsed for nonpayment of premiums . . . ." *Id*. at 70-72. This was for several reasons: (1) the insurer's own policies called for return of a copy of the assignment form to the plaintiff anyway, distinguishing the situation from an obligor who casually learned that the obligation had bene extinguished; (2) the insurer is more than a casually disinterested third party because of the quasi-public nature of the life insurance industry, given the use of such policies as convenient security devices; and (3) the legal status of an insurance policy is within the knowledge of the insurer alone. *Id*. at 71-72.

Additional cases have discussed the elements of an exclusive knowledge duty as articulated in *Lingsch* in other commercial contexts, albeit without much searching discussion of the propriety of doing so. In *Continental Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal. App. 3d 388 (1989), which concerned a dispute over the purchase of a commercial airplane, the court assumed without detailed discussion that a *Lingsch*-type exclusive knowledge fraudulent nondisclosure claim was appropriate under the circumstances, but set aside a jury verdict based on any such claim because the jury was not instructed as to the intent and reliance elements set forth in *Lingsch*. *Id*. at 407-408. In *OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 859-62 & n.

16 (2007) *as modified* (Dec. 26, 2007), the court upheld jury instructions based upon *Lingsch* in a dispute over the sale of securities. *Magpali v. Farmers Group, Inc.*, 48 Cal. App. 4th 471, 482 (1996), assumed that a *Lingsch*-type exclusive knowledge duty may apply to an employee-employer relationship, but found such a claim factually unsupportable on the record in that case. Likewise in *United States v. Sardie,* 191 F. Supp. 2d 1128, 1132 (C.D. Cal. 2000), a *qui tam* action involving public contractors who allegedly overbilled and mischarged for their earthquake debris removal services, the district court applied the *Lingsch* elements as articulated in *San Diego Hospice*, 31 Cal. App. 4th at 1055, but found that the evidence did not support such a claim. Finally, in *Terstate Restoration, LLC v. Seaman*, No. SACV1300706DOCRNBX, 2014 WL 12569347 (C.D. Cal. July 9, 2014), the elements of a *Lingsch*-type exclusive knowledge claim were applied to a dispute over a receiver's failure to pay a contractor for restoration work in which the plaintiff alleged fraudulent concealment based upon exclusive knowledge of one aspect of the financial arrangement in question. 2014 WL 12569347, at *8.

Defendants argue that such a duty should not be applied in the circumstances of this case because under California law "no fiduciary duty to disclose exists in the context of an arm's length, independent contractor relationship." ECF No. 21 at 6 (citing *City of Hope Nat. Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 389 (2008)). While *City of Hope* does stand for the proposition that a contract does not automatically give rise to a fiduciary duty, *see* 43 Cal. 4th at 389, this is a red herring, as the Complaint does not allege the existence of a fiduciary relationship and no such relationship is required to trigger liability under an exclusive knowledge theory. As the cases discussed above articulate, a duty to disclose may arise without any fiduciary relationship "where the defendant alone has knowledge of material facts which are not accessible to the plaintiff." *Magpali*, 48 Cal. App. 4th at 482. At this stage of the case, particularly in light of *Sardie,* 191 F. Supp. 2d at 1132, and *Terstate*, 2014 WL 12569347, at *8, discussed above, which deal with contractor relationships, the Court will not find that Plaintiff's claim is precluded as a matter of law. This finding does not preclude the parties from address this issue directly during later stages of this case.

Defendants also argue that Plaintiff's "exclusive knowledge" claim fails as a factual matter. The Complaint alleges that "DFJV knew, but did not disclose to Plaintiff prior to the parties executing the Subcontract, that CJSRA had not yet acquired rights of access necessary to permit WPEC to begin, let alone complete, its work within 90 days of executing the Subcontract." Compl. at ¶ 23. In addition, WPEC alleges that "DFJV knew that portions of the DFJV-controlled design pertaining to WPEC's work Reaches were either already in the process of being revised, or would need to be revised, and that such revisions would delay the delivery of the rights of way by CHSRA due to the need to modify/alter the limits of the various rights of way needed." Id. at ¶ 24. The Complaint alleges generally that such facts were exclusively known to DFJV. Id. at ¶ 25.

Defendants rejoin that WPEC cannot claim that DFJV had sole and exclusive knowledge of the status of acquisition of the ROW because acquisition of ROW was performed by CHSRA, a non-party to this case and a public entity. Defendants argue that because the Project is a public work owned by CHSRA, information concerning the status of ROW was publicly available and subject to disclosure under California's Public Records Act ("CPRA"). ECF No. 21 at 7-8 (citing Cal. Gov. Code §§ 6250-6276.48[2]). The CPRA "generally requires public agencies to disclose public records, subject to exemptions." *Sacramento Cty. Employees' Ret. Sys. v. Superior Court*, 195 Cal. App. 4th 440, 446 (2011). Generally, disclosure is effected by the requirement that "agencies [ ] allow members of the public to inspect the records in their custody and to obtain copies thereof." *See New York Times Co. v. Superior Court*, 52 Cal. App. 4th 97, 100 (1997), *disapproved of on other grounds by Copley Press, Inc. v. Superior Court*, 39 Cal. 4th 1272 (2006). Upon receipt of a request for a copy of records, a public agency must within 10 days make an initial determination as to the disclosabilty of the information requested, with the possibility of extending that period by an additional 14 days. *See* Cal. Pub. Code §

---

[2] Defendants erroneously label these provisions of the California Public Record Act as provisions of California's Ralph M. Brown Act. They are not. *See* Cal. Gov. Code § 6251. The Brown Act, *see* Cal. Gov. Code. § 54950.5, generally requires legislative bodies in California to conduct meetings in open, public sessions, and to post meeting agendas in advance. *See Boyle v. City of Redondo Beach*, 70 Cal. App. 4th 1109, 1113 (1999).

6253.

It is not immediately clear how the CPRA would impact the claims in this case. Defendant appears to be suggesting that because WPEC could have used the CPRA to obtain information about the status of ROW acquisition from the CHSRA, WPEC's assertion that DFJV had exclusive knowledge of the status of ROW acquisition fails as a matter of law. Defendants have provided no authority directly holding as much, and the Court's own research suggests otherwise. In *Terstate*, which, as mentioned, concerned a dispute over a receiver's failure to pay a contractor for restoration work, the plaintiff alleged fraudulent concealment based upon exclusive knowledge. 2014 WL 12569347, at *8. The receiver argued that "all of the documents that would have disclosed the [allegedly] concealed facts were posted to the receivership website, and were filed on the public docket of [a related] court case." *Id*. The receiver maintained "that sophisticated commercial counsel would know that a receivership cannot sell assets without Court approval, and would know that the loan contract was publicly available." *Id*. The district court disagreed, finding that "California law appears unwilling, even in the case of more sophisticated parties, to find public dissemination alone enough to defeat a claim of fraudulent concealment." *Id*. (citing *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 295 (2004) ("[T]he contention that publicly available information cannot form the basis for a concealment claim is mistaken. The mere fact that information exists somewhere in the public domain is by no means conclusive.")). In *Terstate*, the district court nonetheless granted the receiver's summary judgment motion because there was not enough evidence to establish that the receiver knew the contractor was not checking court filings or engaging in other activities that would have revealed the information in question. *Id*.

Here, the Complaint alleges that DFJV was in possession of CHSRA's most recent update on the status of ROW acquisition, an update that "notified DFJV that the parcels needed for performance of WPEC's Subcontractor work had <u>not</u> all been acquired by CHSRA." Compl. at ¶ 23 (emphasis in original). "At no time prior to execution of the Subcontract did WPEC know that any of the rights of

way necessary for performance of WPEC's Subcontract work had not yet been acquired by CHSRA. . . . All such facts, as between WPEC and DFJV, were exclusively known to DFJV and concealed from WPEC." *Id*. at ¶ 25. For the purposes of pleading, this is sufficient to allege plausibly through circumstantial evidence Defendant's exclusive knowledge of the state of the ROW acquisition and that Defendant knew such information was unknown to or beyond the reach of the plaintiff. Fed. R. Civ. P. 9(b)("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

As to the allegations concerning design changes, Defendants point out that design drawings were attached to the Subcontract and ask the Court to take judicial notice of one version of the design documents. *See* ECF No. 19-1 at 3. WPEC's owner, Virginia Villa, disputes the authenticity of the version of the drawing provided by Defendants and claims that version was never attached to the Subcontract. ECF No. 20-1 at 2. Ms. Villa presents a version of the plans dated August 17, 2016 that she claims were attached to the Subcontract. ECF No. 39. As a threshold matter, the Court cannot take judicial notice of the version of the design documents provided by Defendants, as the issue of whether they were attached to the Subcontract is disputed. *See* Fed. R. Evid. 201(b) (permitting judicial notice of facts that are "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). Apparently accepting the version of the plans provided by Ms. Villa, Defendants nevertheless insist that Plaintiff's "allegations pertaining to DFJV's representations concerning the completeness of the project plans are contradicted by the terms of the plan documents" provided by Ms. Villa. ECF No. 42 at 2. In light of Defendants' reliance on the plan documents provided by Ms. Villa, the Court will therefore assume their authenticity and will take judicial notice of them for the purposes of this ruling only.

Defendants point to the title block of the plan documents that reads "SUBMITTAL FOR AT&T REVIEW AND ACCEPTANCE." ECF No. 39 at 1. In addition, the General Notes section of the second page of the plans indicates "Drawings subject to change pending ongoing negotiations and service connection relocations." *Id*. at 2. Defendant nonetheless claims that WPEC's acknowledgement of

possession of these drawings demonstrates that DFJV did not have exclusive possession of knowledge regarding the design drawings for the Project. *See* ECF No. 21 at 8. But, acknowledgement of receipt of a design drawing that is in the process of being approved and which is "subject to change" is distinct from having knowledge that the design was in such a state of flux that it would make completion of the Subcontract within 90 days impossible. The Complaint alleges that DFJV knew at the time it executed the Subcontract that portions of the DFJV-controlled design pertaining to WPEC's work Reaches "were either already in the process of being revised, or would need to be revised, and that such revisions would delay the delivery of the rights of way by CHSRA due to the need to modify/alter the limits of the various rights of way needed." Compl. at ¶ 24. The design drawings do not clearly and unequivocally rule out this factual possibility. Moreover, as with the ROW issue, the Complaint alleges plausibly through circumstantial evidence Defendant's exclusive knowledge of the state of the design and that Defendant knew such information was unknown to or beyond the reach of the plaintiff. *See id*. at ¶ 25 Fed. R. Civ. P. 9(b).

No party questions that the Complaint alleges sufficiently that the purportedly withheld information was material. "A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'" *Engalla v. Permanente Med. Grp., Inc*., 15 Cal. 4th 951, 977 (1997), *as modified* (July 30, 1997) (quoting Rest. 2d Torts, § 538, subd. (2)(a)) (other citations omitted). "[A]s such materiality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.'" *Id.* (quoting Rest. 2d Torts, § 538, com. e, p. 82). "[A] presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *Id*. Here, the allegedly concealed facts go to the heart of Plaintiff's ability to perform a multi-million dollar contract within the time frame Plaintiff expected. *See* Compl. at ¶¶ 35-37. For pleading purposes, materiality and reliance are alleged.

Plaintiff has pled with sufficient specificity a fraudulent concealment claim based upon exclusive

knowledge. Defendants' motion to dismiss any such claim is DENIED.

### d.    Partial Representation

Under *LiMandri*, the fourth circumstance that can give rise to a cause of action for fraudulent concealment in the absence of a fiduciary relationship is when a defendant makes partial representations but also suppresses some material facts. *LiMandri*, 52 Cal. App. 4th at 336. The Complaint relies on the Subcontract to demonstrate the existence of a partial representation regarding acquisition of ROW/completeness of the design. DFJV argues that claims based upon this theory must fail because WPEC cannot claim that it relied on any representations concerning ROW and design delivery that contradict the express terms of the written subcontract. ECF No. 18-1 at 14.

As a threshold matter, neither Party addresses directly the nature of the alleged partial representation. Plaintiff does not suggest that the Subcontract contains any <u>explicit</u> promise that sufficient ROW had been obtained or that the design was final enough to permit completion of the Subcontract within 90 days of Subcontract execution. Rather, it appears that Plaintiff is attempting to allege that such a promise can be implied from other terms of the contract. The Prime Contract provides:

> 3.2 Prerequisites for Start of Construction
>
> The Contractor shall not start construction (or recommence construction following any suspension) of any portion of the Project until all the following events have been fully satisfied with respect to the Work proposed to be constructed:
>
>                ***
>
> d. All necessary rights of access for such portion of the Project have been obtained.

ECF No. 1-1. Paragraph 16 of Attachment C to the Subcontract provides:

> SCHEDULE and TIME OF COMPLETION: Subcontractor must complete all work to achieve substantial completion ("Subcontract Substantial Completion Deadline") within 90 Calendar Days of Notice to Proceed (Execution of Subcontract). Subcontractor shall immediately proceed with all submittals for material procurement upon receipt of Contractor's Notice of Intent to Subcontract. Notice to Proceed (Execution of Subcontract) shall be issued no later than 15 Calendar Days following

Notice of Intent to Subcontract.

On or before the Subcontract Substantial Completion Deadline, Subcontractor must complete all work to acceptance of AT&T & Frontier Communication Co and to allow Contractor to place embankment over Subcontractor's work. In addition, Subcontractor must complete all work to achieve substantial completion of each intermediate milestone deadline below. Subcontractor is subject to assessment of

Liquidates [sic] Damages in the amount of $500/Calendar Day for not achieving Subcontract Substantial Completion Deadline, or any individual Intermediate Milestone, independently.

a. *See* Table A for Schedule

| Act ID | DESCRIPTION | Start Date | Completion Date |
|---|---|---|---|
| | NTO 5 - S Willow Ave/S Peach Ave | 28-Nov-16 | 12-Dec-16 |
| | NTO 7 - E Elkhorn Ave | 2-Jan-16 | 30-Jan-16 |
| | NTO 10 - 9th Ave | 9-Dec-16 | 23-Dec-16 |
| | NTO 11 - Cairo Ave | 5-Dec-16 | 19-Dec-16 |
| | NTO 30 - Clovis Ave | 16-Dec-16 | 31-Dec-16 |

d. Subcontract Substantial Completion Deadline: 02/28/2017

ECF No. 1-1 (Subcontract) at 47, Attachment C ¶ 16.

No party has broached directly the subject of whether, as a matter of contract interpretation, the representation alleged by Plaintiff can be implied from existing contract terms. Contract interpretation is normally a judicial function. *See Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co., Inc.*, 69 Cal. 2d 33, 39-40 (1968). In a nutshell, when engaging in this function, the trial court "give[s] effect to the mutual intention of the parties as it existed" at the time the contract was executed. Cal. Civ. Code § 1636. "Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms." *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1126 (2008), *as modified on denial of reh'g* (June 4, 2008) (citing Cal. Civ. Code §§ 1638-39).

When the meaning of the words used in a contract is disputed, the trial court engages in a three-step process. First, it provisionally receives any proffered extrinsic evidence that is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. If, in light of the extrinsic evidence, the language is reasonably susceptible to the

16

interpretation urged, the extrinsic evidence is then admitted to aid the court in its role in interpreting the contract. When there is no material conflict in the extrinsic evidence, the trial court interprets the contract as a matter of law. This is true even when conflicting inferences may be drawn from the undisputed extrinsic evidence or that extrinsic evidence renders the contract terms susceptible to more than one reasonable interpretation. If, however, there is a conflict in the extrinsic evidence, the factual conflict is to be resolved by the jury.

*Id*. at 1126-27 (internal citations omitted).

Here, the key contract interpretation issue appears to be whether the above-quoted language from the Prime Contract as well as the "SCHEDULE and TIME OF COMPLETION" section of the Subcontract results in an implied term as to the readiness of ROW and the design for Plaintiff to proceed with its work. A court may find an implied contract provision only if:

> (1) the implication either arises from the contract's express language or is indispensable to effectuating the parties' intentions; (2) it appears that the implied term was so clearly within the parties' contemplation when they drafted the contract that they did not feel the need to express it; (3) legal necessity justifies the implication; (4) the implication would have been expressed if the need to do so had been called to the parties' attention; and (5) the contract does not already address completely the subject of the implication.

*Richard D. Corona v. Claire L. Corona*, 172 Cal. App. 4th 1205, 1222 (2009).

While not addressing this issue of contract interpretation head on, Defendants cite *Hadland v. NN Investors Life Insurance Co*., 24 Cal. App. 4th 1578, 1589 (1994), and *Glenn K Jackson, Inc. v. Roe*, 273 F.3d 1192, 1201 (9th Cir. 2001), to argue that Plaintiff may not, as a matter of law, reasonably rely on a representation that conflicts with the terms of a written contract. *Hadland* concerned an alleged oral representation made to plaintiffs by an insurance salesperson. 24 Cal. App. 4th at 1581. The plaintiffs admitted that they never read the underlying policy they eventually purchased through the salesperson. *Id*. at 1586. Because the alleged oral representation about coverage conflicted with the unambiguous written terms of the policy, the court found plaintiffs could not have relied justifiably on the oral representation and therefore that they could not maintain a claim for fraud based upon those alleged misrepresentations. *Id*. at 1586-89.

The plaintiff in *Glenn K.* was a law firm that specialized in worker's compensation defense. 273 F.3d at 1195. The firm entered into a litigation handling procedures agreement with a worker's compensation insurer, which provided that the insurer could conduct on-site audits of the law firm utilizing both independent and internal teams of auditors, claims personnel, and/or lawyers. *Id*. The insurer initiated an audit and hired an independent auditor to do the work. *Id*. at 1196. That auditor eventually found numerous irregularities which were memorialized in a report that later formed the basis of a fee dispute settlement. *Id*. The law firm eventually sued, raising, among other things, a fraudulent misrepresentation claim based upon alleged misrepresentations the auditor made about his qualifications. Although the principal stated he "felt" he had the right to object to the auditor selected, the Court of Appeals found that it was unreasonable for the law firm or its principal to rely on any alleged misrepresentation by the auditor because the insurer retained "complete unchecked discretion to select the auditor." *Id*. at 1201. Because the written terms of the contract indicated plaintiff had no right to object to the audit or the auditor, the law firm principal's "feelings" that he had such discretion were not sufficient to create a genuine dispute of fact on summary judgment. *Id*.

Both *Hadland* and *Glenn K.* turn on the fact that unambiguous contract terms conflicted directly with asserted, unwritten misrepresentations. The situation alleged here is somewhat different. The Complaint alleges that the contract documents (the Prime Contract read alongside the Subcontract) imply a term that amounts to a partial representation as to the anticipated duration of the subcontract and that DFJV suppressed material facts regarding an alternative anticipated duration. As outlined above, Plaintiff points to language in the Prime Contract and Attachment C to the Subcontract that suggest, when read in concert, that DFJV anticipated subcontract completion on or before February 28, 2017, approximately 90 days from execution of the contract. The asserted representation in this case is of a different nature than those in *Hadland* and *Glenn K.* because, here, Plaintiff suggests the representation is underlined from contract language. Moreover, the type of direct conflict present in *Hadland* and *Glenn K.* does not appear to exist here. Defendants suggest that the alleged partial representation as to the

anticipated duration of the Subcontract conflicts with other terms in the Prime Contract and Subcontract.

ECF No. 18-1 at 14-15. Defendants first point to Section 59.1 of the Prime Contract's General

Provisions, which provides in full:

> The Authority will acquire all ROW identified in the ROW Acquisition plan and any other ROW necessary for the Project. The Contractor shall not enter into negotiations for purchase of any property or property rights except as provided herein.
>
> Contractor acknowledges that the final ROW available for construction may differ from the ROW Acquisition Plan as ROW negotiations proceed. The Authority will work with Contractor to minimize the impact of a decrease or adjustment in available ROW.
>
> Right of possession of the Site and the improvements made thereon by the Contractor shall remain at all times with the Authority. The Contractor's right to entry and use of the Site arise solely from permission granted by the Authority under the Contract, except as identified in <u>Section 59.2.1</u>.
>
> The Authority will provide the Contractor with regular updates regarding the status of the acquisition process for parcels for which access has not been provided. The Authority will provide written notification to the Contractor of the availability of each identified parcel and notify the Contractor of any access restrictions that may be applicable.
>
> The Authority will provide access to the real property identified in the ROW Acquisition Plan by the deadlines provided therein. If the Authority fails to provide access in accordance with the deadlines in the ROW Acquisition Plan or at any time determines that it will be unable to provide access to a parcel(s) in accordance with the deadlines in the ROW Acquisition Plan, the Authority may notify the Contractor of the revised projected date(s) for delivery of access. Upon such notice, or in the absence of such notice, upon the failure to provide access on the deadline specified on the ROW Acquisition Plan, the Contractor shall:
>
>     a.   Take immediate action to minimize any cost and time impact and shall work around such parcel until access can be provided, including rescheduling and re-sequencing the Work so as to minimize or avoid any delay to the Project; and
>
>     b.   Provide the Authority written notice within five Working Days after receipt of such notice or upon the Authority's failure to meet the schedule in the ROW Acquisition Plan whether the Authority's failure to provide access will result in a delay to a Completion Deadline.
>
> Failure to provide such notice shall bar the Contractor from asserting a delay under this clause. The Contractor shall work proactively with the

Authority to resolve ROW acquisition changes and to adjust its
construction schedule to accommodate these changes.

Prime Contract § 59.1 (ECF No. 18-2 at 12-13). In addition, Defendants point to Section 17.2, subpart 16 of the Prime Contract, which provides that the prime contractor (DFJV) "shall be entitled to a Change Order for a circumstance that increases the Contract Price or extends a Completion Deadline . . . if [CHSRA] fails to provide access to the real property identified in the ROW Acquisition Plan on or before the deadline for such access set forth therein, to the extent provided in the 'General' clause (Section 59.1)." Prime Contract § 17.2(16) (ECF No. 18-2 at 9-11). Defendants assert that "based on the plain meaning of these terms, any promise to the effect that all ROW either had been secured or would be secured prior to the performance of work was expressly disclaimed." ECF No. 18-1 at 15.

The Court does not see the present facts as fitting neatly within the *Hadland*/*Glenn K.* analytical framework. The above language is contained within the Prime Contract, an agreement executed between CHSRA and DFJV. While it appears undisputed (and is entirely appropriate to assume) that the Prime Contract was made available to WPEC prior to the execution of the Subcontract, WPEC's reading of the Subcontract as containing a representation as to the expected duration of the Subcontract is not at all inconsistent with the Prime Contract containing a disclaimer, designed to benefit CHSRA, that permitted CHSRA to modify the Prime Contract timetable if CHSRA was unable to obtain appropriate ROW. At least for purposes of pleading, it is reasonable to read DFJV's execution of the Subcontract containing the 90-day timetable as a representation that all ROW had been obtained such that the work could be completed within 90 days. Such a representation is not in direct conflict with the language relied-upon by Defendants, which makes no specific representation as to the timing of the acquisition of ROW. While CHSRA did retain the right to modify the Prime Contract timetable to reflect issues it had obtaining ROW, the existence of that procedural mechanism does not definitively demonstrate that at the time the Subcontract was executed CHSRA had yet to acquire ROW sufficient to permit the Subcontract to be completed within 90 days.

Relatedly, Defendants argue that other contract language contradicts Plaintiff's allegation that "DFJV-controlled design pertaining to WPEC's work Reaches were either already in the process of being revised, or would need to be revised, and that such revisions would delay the delivery of rights of way by CHSRA due to the need to modify/alter the limits of the various rights of way needed." ECF No. 18-1 at 15 (citing Compl. at ¶ 24). Defendants contend that this allegation is in conflict with the following language from Attachment C to the Subcontract:

> Quantities will be measured and paid based upon verified actual installed and accepted work in conformance with the design plans and specifications marked "Released For Construction", as may from time to time be amended by the Engineer of Record by RFI response, or otherwise provided in writing. RFC design plans will be provided to the subcontractor when plans become available. If RFC plans differ from the plans in Attachment A of this RFP package, the difference will be paid at the unit price for that bid item.

ECF No. 1-1 (Subcontract), Attachment C ¶ 5. Defendants argue that "[p]ursuant to these terms, design was represented as not complete and subject to revision during course of construction." ECF No. 18-1 at 15. While this language can certainly be read to disclaim the existence of completely finalized plans, this still is not in direct conflict with Plaintiff's alleged partial representation, which is based on the factual allegation that DFJV had knowledge that plans were in the process of being revised to such an extent that the representation of the Subcontract duration suggested by the timetable contained within Attachment C was grossly inaccurate.[3]

Nonetheless, the question still remains whether principles of contract interpretation permit the existence of the implied representation Plaintiff advances in this case. As mentioned, a court may find an implied contract provision only if:

---

[3] Less compelling is Defendants' reliance on the fact that the schedule shows WPEC was to begin its work one month after execution of the Subcontract. Defendants suggest that this 30-day window somehow precludes an implied representation that the design was complete and ROW acquired. ECF No. 21 at 4. But, there could be other reasons for the 30-day window, including simply giving Plaintiff some time to ramp up to begin work on the project.

> (1) the implication either arises from the contract's express language or is indispensable to effectuating the parties' intentions; (2) it appears that the implied term was so clearly within the parties' contemplation when they drafted the contract that they did not feel the need to express it; (3) legal necessity justifies the implication; (4) the implication would have been expressed if the need to do so had been called to the parties' attention; and (5) the contract does not already address completely the subject of the implication.

*Corona*, 172 Cal. App. 4th at 1222. Does the fact that the Subcontract expressly reserves to DFJV the right to update and make changes to the Subcontract schedule suggest that an implied provision regarding readiness to complete within 90-days was not "within the parties' contemplation" when they drafted the contract? This and related issues are not addressed in the papers filed thus far, so the Court does not have the benefit of the parties' positions on the matter. Accordingly the Parties are directed to file supplemental briefs, no longer than seven (7) pages in length addressing the following questions:

- Exactly what partial representation does Plaintiff contend is either contained in or implied by the Subcontract; and

- If Plaintiff contends the representation in question is implied by other terms of the contract, how may the Court find that provision exists by implication in light of California contract law?

Because having Plaintiff address the first question will narrow the issues, the Court believes it would be beneficial to have Plaintiff file first. Therefore, Plaintiff shall file its supplemental brief on or before May 17, 2018. Defendant shall file any responsive brief on or before May 31, 2018. No reply is authorized at this time.

## 2. Past or Existing Facts

Defendants next argue the first and third claims for fraud must fail because the claims are based on predictions as to future actions by CHSRA. ECF No.18-1 at 17. "[A]n actionable misrepresentation must be made as to past or existing facts." *Borba v. Thomas*, 70 Cal. App. 3d 144, 152 (1977); *see also Moniz v. G.M.C.*, No. C 98-4913 MJJ, 2000 WL 1375285, at *5 (N.D. Cal. Sept. 18, 2000) (relying on

*Borba*), *aff'd*, 23 F. App'x 855 (9th Cir. 2002). "[P]redictions as to future events, or statements as to future action by some third party, are deemed opinions, and are not actionable fraud." *Borba*, 70 Cal. App. 3d at 152 (internal quotation omitted). Here, Defendants argue that the concealment claims "pertain entirely to the future actions by CHSRA obtaining ROWs for the Project." ECF No. 18-1 at 17. Defendants point out that the Complaint alleges "CHSRA was regularly updating DFJV with respect to the status of CHSRA's acquisition of the rights of way needed for performance of WPEC's Subcontract work." Compl. at ¶ 23. Defendants assert that this fact establishes: (1) that the entity responsible for obtaining ROWs was CHSRA; and (2) ROW delivery was not a completed event but a work in progress. ECF No. 18-1 at 17. Defendants focus on a tree but neglect to notice the forest. The essence of the misrepresentation claim is that Defendants concealed facts that allegedly existed as of October 25, 2016, the date the Subcontract was executed, namely that: (a) the ROW for the parcels on which WPEC's work was to be performed had not yet been acquired by CHSRA; and (b) portions of the DFJV-controlled designs pertaining to WPEC's scope of work were in the process of being revised (or would need to be revised) in a manner that would materially delay the delivery of ROW by CHSRA. Compl. at ¶¶ 23-24. In reply, Defendants simply assume that the Subcontract did not make any representations regarding the acquisition of ROW or the completeness of the design drawings. ECF No. 21 at 5. As discussed above, the Court is not prepared to make that assumption at this stage of the case.

The motion to dismiss on this ground is DENIED. /

**B.**   **Remaining Claims and Issues**

The Court holds in abeyance any ruling on the remaining claims challenged by Defendants' motion to dismiss, as resolution of those claims is largely, if not entirely, derivative of the issues on which supplemental briefing is requested.

## VI. CONCLUSION

For the reasons set forth above,

(1) Defendants' motion to dismiss is DENIED as to the first and third causes of action to the

extent they are based on exclusive knowledge fraudulent concealment.

(2) The Court holds in abeyance a final ruling on Defendants' motion to dismiss the first and third causes of action to the extent they are premised on partial representation fraudulent concealment and directs the Parties to file supplemental briefs, no longer than seven (7) pages in length addressing the following questions:

- Exactly what partial representation does Plaintiff contend is either contained in or implied by the Subcontract; and

- If Plaintiff contends the representation in question is implied by other terms of the contract, how may the Court find that provision exists by implication in light of California contract law?

Plaintiff shall file its supplemental brief on or before May 17, 2018. Defendant shall file any responsive brief on or before May 31, 2018. No reply is authorized at this time.

(3) Finally, the Court holds in abeyance any ruling on the remaining claims challenged by Defendants' motion to dismiss.

IT IS SO ORDERED.

Dated: __**May 4, 2018**__ _____**/s/ Lawrence J. O'Neill**_____
                              UNITED STATES CHIEF DISTRICT JUDGE