# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEST PACIFIC ELECTRIC COMPANY CORPORATION,<br><br>  Plaintiff,<br><br>  v.<br><br>DRAGADOS/FLATIRON, a joint venture, *et al.*,<br><br>  Defendants. | 1:18-CV-00166 LJO BAM<br><br>ORDER DENYING REMAINING ASPECTS OF DRAGADOS/ FLATIRON'S MOTION TO DISMISS<br><br>(ECF No. 18) |

## I. **INTRODUCTION**

Defendant, a joint venture between Dragados USA, Inc., and Flatiron West, Inc. ("DFJV"), moved to dismiss the first through fourth causes of action in the Complaint, brought by Plaintiff West Pacific Electric Company, Inc. ("WPEC"). ECF No. 18. On May 4, 2018, the Court denied that motion in part, finding that Plaintiff pled with sufficient specificity a fraud claim under *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997), based upon exclusive knowledge, ECF No. 43 at 14-15, and requesting supplemental briefing on Plaintiff's alternative theory, also grounded in *LiMandri*, based upon a partial representation. *Id*. at 15-21. Of particular import here, the May 4, 2018 Order requested clarification as to the nature of the partial representation relied upon by Plaintiff. *Id*. at 15-22. Both parties submitted supplemental briefing on the partial representation theory. *See* ECF Nos. 46 & 47. Having reviewed those supplemental briefs in light of the entire record, the Court DENIES DFJV's motion to dismiss in its entirety.

## II. BACKGROUND

This case concerns WPEC's work on the California High Speed Rail Project (the "Project"). In 2015, DFJV became the prime contractor on the Project pursuant to a prime contract ("Prime Contract") between DFJV and the California High Speed Rail Authority ("CHSRA"), whereby DFJV agreed to design and build a section of the Project to extend from Fresno to Bakersfield. ECF No. 1 ("Compl.") at ¶ 16. On October 25, 2016, WPEC and DFJV entered into a written subcontract ("Subcontract") pursuant to which WPEC agreed to complete installation of certain telecommunication infrastructure for five specific "Reaches" of the Project. *Id*. at ¶ 17. The Subcontract required WPEC to provide a performance bond in the amount of 50% of the contract price and a payment bond in the amount of 100% of the contract price. *Id*. at ¶ 18. It is alleged that WPEC, which has limited bonding capacity, agreed to provide such bonding on the basis that the entire scope of work was to be performed within the expressed 90 days set forth in a schedule attached to the Subcontract, such that WPEC's capacity for bonding (and concomitant ability to seek and obtain other work requiring bonds) would not be impaired for a significant amount of time. *See id*. at ¶ 19; *see also* ECF No. 1-1 (Subcontract), Attachment C at 7.

Plaintiff's first cause of action is for rescission of the Subcontract based upon fraud. This claim points out that the Prime Contract contains a provision that precludes construction of any portion of the Project until all necessary rights of access for that portion of the Project have been obtained. Compl. at ¶ 21. CHSRA was responsible for acquiring all relevant rights of way ("ROW") for the Project. *See id*. at ¶¶ 23-24. Plaintiff alleges that, prior to entering into the Subcontract with WPEC, DFJV had been notified by CHSRA that CHSRA had not acquired all the rights of way necessary for DFJV to complete its work on the Subcontract and that DFJV failed to disclose to WPEC that CHSRA had not acquired the necessary rights of way "to permit WPEC to begin, let alone complete, its work within 90 days of executing the Subcontract." Compl. at ¶ 23. In addition, WPEC alleges that DFJV knew at the time it executed the Subcontract that portions of the DFJV-controlled design pertaining to WPEC's work Reaches "were either already in the process of being revised, or would need to be revised, and that such

2

revisions would delay the delivery of the rights of way by CHSRA due to the need to modify/alter the limits of the various rights of way needed." *Id*. at ¶ 24. WPEC alleges that had it possessed or known of this information, WPEC would not have executed the Subcontract. *Id*. at ¶ 28.

The second cause of action is for rescission of the contract based upon mistake of fact, including Plaintiff's belief that all ROW for the parcels on which Plaintiff's work would be performed had been acquired, that no work could begin on a portion of the Project until all rights of way had been obtained, and that the design was not in flux such that such chances might affect the rights of way obtained or still needing to be obtained. *Id*. at ¶ 32.

The third cause of action is for fraudulent concealment and alleges that, while the Subcontract provides that WPEC's work was to be completed within 90 days of execution of the Subcontract, DFJV intentionally concealed the fact that the rights of way for the Reaches on which WPEC would be required to work had yet to be acquired by CHSRA and that portions of the design pertaining to WPEC's work were in the process of being revised or would need to be revised in ways that would materially impact the acquisition of the necessary rights of way. *Id*. at ¶ 35.

The fourth cause of action alleges a violation of California's Unfair Practices Act, Cal. Bus. Prof. Code § 17200 *et seq*., based upon the conduct alleged in the other causes of action. *Id*. at ¶¶ 41-48.

The remaining causes of action (fifth through eleventh) are not challenged in the motion to dismiss. *See* ECF No. 18 at 2.

### III. STANDARDS OF DECISION

Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most

favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting [the] fraud[.]" Fed. R. Civ. P. 9(b). This heightened pleading standard requires the party to do more than simply identify a transaction and allege in a conclusory manner that the transaction was fraudulent. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds*. Rather, the party must set forth in detail "the who, what, when, where, and how" of the alleged fraudulent conduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The purpose of Rule 9(b) is to protect defendants from factually baseless claims of fraud inasmuch as it is meant to give defendants notice of the claims asserted against them. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). When a party averring fraud fails to meet the heightened pleading standard of Rule 9(b), dismissal of the claim is proper. *See Vess*, 317 F.3d at 1107 ("A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim.").

## IV. ANALYSIS

### A. Fraud Claims Based on Partial Representation

The elements of fraud under California law are: (1) a misrepresentation (which may include a false representation, concealment, or nondisclosure); (2) knowledge of its falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996); *see also In re First Am. Home Buyers Prot. Corp. Class Action Litig.*, 313 F.R.D. 578, 603 (S.D. Cal. 2016), *aff'd sub nom. Carrera v. First Am. Home Buyers Prot. Co.*, 702 F. App'x 614 (9th Cir. 2017). To establish fraud through nondisclosure or concealment of facts, a plaintiff must prove: (1) defendant concealed or suppressed a material fact; (2) defendant was under a duty to disclose the fact to plaintiff; (3) defendant intentionally concealed or suppressed the fact with the intent to

4

defraud plaintiff; (4) plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage. *See Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 868 (2008); *see also Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012). "There are four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *LiMandri*, 52 Cal. App. 4th at 336 (internal quotation omitted); *see also Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1186-87 (2014), *as modified on denial of reh'g* (Aug. 13, 2014); *Baggett v. Hewlett–Packard Co.*, 582 F. Supp. 2d 1261, 1267-68 (C.D. Cal. 2007) (citing *LiMandri*, 52 Cal. App. 4th at 336). Plaintiff made clear that it is attempting to rely on the second and fourth circumstances described in *LiMandri*. The May 4, 2018 Order denied DFJV's motion to dismiss any claim based upon the second circumstance; the remaining dispute concerns the fourth circumstance of partial representation.

Although the Court initially interpreted the Complaint as raising a claim based upon representations/promises implied from contractual language (e.g., that ROW/Design was complete), Plaintiff clarified in its supplemental briefing that it is relying on express representations in the relevant contracts. ECF No. 46 at 2. Specifically, it relies on "[t]he express representation contained in Paragraph 16 of Attachment C to the Subcontract that all of Plaintiff's work would be performed within 90 days of execution of the Subcontract;" and "[t]he express representation in Section 3.2 of the Prime Contact which provides that Contractor would not start construction of any portion of the Project until all rights-of-way had been obtained."[1] *Id*.

---

[1] As a result of this clarification, the Court need not resolve the secondary question it raised in its request for supplemental

Paragraph 16 of Attachment C to the Subcontract provides:

> SCHEDULE and TIME OF COMPLETION: Subcontractor must complete all work to achieve substantial completion ("Subcontract Substantial Completion Deadline") within <u>90 Calendar Days</u> of Notice to Proceed (Execution of Subcontract). Subcontractor shall immediately proceed with all submittals for material procurement upon receipt of Contractor's Notice of Intent to Subcontract. Notice to Proceed (Execution of Subcontract) shall be issued no later than 15 Calendar Days following Notice of Intent to Subcontract.
>
> On or before the Subcontract Substantial Completion Deadline, Subcontractor must complete all work to acceptance of AT&T & Frontier Communication Co and to allow Contractor to place embankment over Subcontractor's work. In addition, Subcontractor must complete all work to achieve substantial completion of each intermediate milestone deadline below. Subcontractor is subject to assessment of Liquidates [sic] Damages in the amount of $500/Calendar Day for not achieving Subcontract Substantial Completion Deadline, or any individual Intermediate Milestone, independently.
>
> a. *See* Table A for Schedule

| Act ID | DESCRIPTION | Start Date | Completion Date |
|---|---|---|---|
| | **NTO 5 - S Willow Ave/S Peach Ave** | 28-Nov-16 | 12-Dec-16 |
| | **NTO 7 - E Elkhorn Ave** | 2-Jan-16 | 30-Jan-16 |
| | **NTO 10 - 9th Ave** | 9-Dec-16 | 23-Dec-16 |
| | **NTO 11 - Cairo Ave** | 5-Dec-16 | 19-Dec-16 |
| | **NTO 30 - Clovis Ave** | 16-Dec-16 | 31-Dec-16 |

> d. Subcontract Substantial Completion Deadline: 02/28/2017

ECF No. 1-1 (Subcontract) at 48, Attachment C ¶ 16 (emphasis in original). It is Plaintiff's position that DFJV represented through this provision that all of Plaintiff's work would be complete within 90 days of execution of the Subcontract, while concealing from Plaintiff that not all ROW had been acquired to allow the work to be completed within the 90-day time period, and that significant design changes, which would further delay the ROW delivery and therefore the time for Plaintiff's performance, were in process. ECF No. 46 at 3.

---

briefing: "how may the Court find that [any implied] provision exists by implication in light of California contract law?" *See* ECF No. 43 at 22.

Defendant rejoins that these contract provisions concerning project schedule cannot form the basis of a fraud claim as a matter of law. Defendant points to two cases from outside of California to support the proposition that representations made about construction schedules cannot amount to actionable fraud. The first case on which Defendant relies is an unreported decision from a Supreme Court (the trial-level court) in New York State: *Premier-New York, Inc. v. Travelers Prop. Cas. Corp.*, 20 Misc. 3d 1115(A), 867 N.Y.S. 2d 20 (Sup. Ct. 2008) (Table). In that case, a subcontractor claimed that the prime contractor failed to follow a <u>sample schedule</u> provided to the subcontractor before contract formation. *Id*. at *6. The *Premier* court rejected this argument, finding

> a construction schedule, which is by definition a forward-looking document, and necessarily subject to amendment and revision as may be warranted by the continually changing nature of construction, cannot be characterized as a representation, upon which reliance can be reasonably placed (*see* Black's Law Dictionary, 8th Ed [2004] [defining "representation" as a "presentation of fact either by words or by conduct made to induce someone to act, esp. to enter into a contract"] ). This is particularly the case with respect to a construction schedule which is contractually stipulated as being a mere sample and subject to change (see Subcontract, at 8; "Time of Performance," ¶ D(3), at 17).

*Id*. The Court is not convinced that *Premier* precludes as a matter of law a fraud claim under the facts and circumstances alleged here, which are quite different from those in *Premier*. Here, the schedule is not a sample; it is an explicit part of the Subcontract and contains, among other things, a liquidated damages provision that might reasonably motivate a subcontractor to anticipate (and act in anticipation of) substantial completion by the deadline set forth therein. Whether or not Plaintiff reasonably relied on the schedule in the Subcontract is not a question amenable to resolution at this stage of the case.

Defendant also points to *Crawford Painting & Drywall Co. v. J.W. Bateson Co.*, 857 F.2d 981, 985 (5th Cir. 1988), a construction dispute arising under Texas law, in which there was evidence that the prime contractor did not always tell all of the subcontractors about various schedule changes impacting the project. There was no express construction schedule at issue in *Crawford*; rather, the asserted failure on the part of the prime contractor was that it failed to make full disclosure of

7

scheduling information to the subcontractors. *Id*. While the Fifth Circuit did hold that a failure to disclose schedule information may constitute a breach of <u>contractual</u> coordination duties, it held that such a failure would not support a <u>tort</u> claim. *Id*. However, the circumstances presented in *Crawford* are distinct from those present here. Namely, in *Crawford*, because there was only an omission, rather than an actual representation as to schedule, Texas law barring fraud claims based upon omissions in the absence of a fiduciary duty barred any fraud claim in that case. Here, as discussed above and in the May 4, 2018 Order, California law allows for a fraud claim based upon a partial representation. *Crawford* is not analogous and does not bar Plaintiff's fraud claim.

In sum, the Court finds that Plaintiff has alleged with sufficient specificity a fraud claim based upon a partial representation that all of Plaintiff's work would be complete within 90 days. Plaintiff has also alleged the second half of a partial representation claim: that Defendant failed to disclose material facts that qualify the facts disclosed. *See Warner Constr. Corp. v. City of Los Angeles*, 2 Cal. 3d 285, 294 (1970) ("In transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise [where] the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead. . . ."). As discussed in the May 4, 2018 Order, Plaintiff has alleged that Defendant exclusively possessed material knowledge about the status of ROW acquisition and the status of the Project's design. This, coupled with the partial representation now articulated, state a claim for fraud under *Limandri*.[2]

Plaintiff also relies on Section 3.2 of the Prime Contract, which provides:

> The Contractor shall not start construction (or recommence construction following any suspension) of any portion of the Project until all the

---

[2] The Court is not convinced by Defendant's brief reference to Section 4.6 of the Subcontract, which provides that "Subcontractor recognizes that [DFJV's] Schedule will be updated and such updates may require changes to the Subcontract Schedule." ECF No. 47 at 6 (quoting Subcontract Section 4.6). Defendant has cited no authority (and the Court cannot locate any) that stands for the proposition that a possibility of delay (and the right of a prime contractor to update schedules to accommodate such delays) totally eviscerates the meaning of any representation made by the prime contractor regarding a project's schedule. This finding is without prejudice to further briefing on the issue at a later stage of the case.

following events have been fully satisfied with respect to the Work
proposed to be constructed:

\*\*\*

d. All necessary rights of access for such portion of the Project have been obtained.

ECF No. 18-2, § 3.2. Plaintiff asserts that this provision (incorporated by reference into the Subcontract) amounts to a representation that "no work could be performed on any section of the Project until all ROW had been obtained," and that the alleged withholding of information pertaining to ROW acquisition and the state of Project design rendered this representation likely to mislead. ECF No. 46 at 3. Defendant maintains this is not a natural reading of the Prime Contract, engaging in a disquisition on the meaning of the words "any" and "all" in Section 3.2 in an attempt to support the proposition that "construction of 'one,' 'some,' or 'all' portions of the Project could be commenced in portions of the Project that have the specified quality of approved right-of-way access," namely that ROW for such portions had been obtained. ECF No. 47 at 3-4. Neither party bothers to put this language into context. Section 3.2 of the Prime Contract provides in full:

> The Contractor shall not start construction (or recommence construction following any suspension) of <u>any portion</u> of the Project until all the following events have been fully satisfied with respect to the Work proposed to be constructed:
>
> a. The Authority has issued NTP;
>
> b. All Governmental Approvals and Final Environmental Documents necessary for construction of <u>such portion</u> of the Project have been obtained and fully and finally approved, the Contractor has furnished to the Authority fully executed copies of such Governmental Approvals and Final Environmental Documents, and all conditions of such Governmental Approvals that are a prerequisite to commencement of such construction have been performed;
>
> c. All insurance policies, Contractor Controlled Insurance Program or Owner Controlled Insurance Program enrollments (if any) and payment ·and performance bonds required to be delivered to the Authority hereunder have been submitted to the Authority as applicable and remain in full force and effect;

9

        d. All necessary rights of access for <u>such portion</u> of the Project have been obtained;

        e. Ready for Construction Submittals have been issued for <u>that portion</u> of the Work and approved by the Authority;

        f. The Contractor has submitted to the Authority and the Authority has approved a GBR-C;

        g. The Contractor has certified that the Work will comply with the Environmental Requirements, as required by the "Environmental Requirements" clause (Section 42.0) and the "Environmental Requirements" clause (Section 4.15.6) of the Scope of Work; and

        Any additional conditions for construction set forth in the Contract Documents have been fully satisfied.

ECF No. 18-2, § 3.2 (emphasis added). Although there is no definition of "portion" provided and that term is used nowhere else in the portions of the Prime Contract that have been provided to the Court, when read in its entirety, it is reasonable to interpret this language as breaking the project up into "portions" that are covered by (and may correspond to individualized) Construction Submittals. The Contractor may not commence construction on any particular "portion" unless and until all the conditions are satisfied, including acquisition of all ROW for that portion. This is not inconsistent with Plaintiff's position in the case, so long as their position is that construction may not commence on any particular "portion" until ROW is acquired for that portion. What is meant by the term "portion"? Does that correspond to the term "Reach"? If so, it is not impossible to find misleading the partial representation that no portion of the Project could be commenced unless and until all ROW was acquired for the project in light of the facts Plaintiff alleges were withheld. Defendant seems to be suggesting that the term "portion" refers to any sub-divided section of the Project the Contractor cares to delineate as a "portion." This seems untenable, as infinitely subdividing the project into tiny "portions," each of which could be commenced upon acquisition of ROW for that portion, risks investment of resources into sections of the Project that might not be able to be completed if all ROW could not be obtained. The Court does not believe the record is sufficiently developed for these issues

to be resolved at this time. In light of the fact that a fraud claim based upon a partial representation theory is stated as to at least one other claim, the Court will not dismiss any such claim based on Section 3.2 at present.

**B.      Rescission Based on Mistake of Fact**

Plaintiff's second cause of action is for rescission under California Civil Code § 1689(b)(1) based on mistake. A mistake of fact is a mistake, not caused by neglect of a legal duty, consisting of: (1) an unconscious ignorance or forgetfulness of a past or present material fact; and (2) belief in the present existence of the material fact, where the fact does not exist or belief in the past existence of the fact, which did not exist. Cal. Civ. Code § 1577. This claim is subject to the same heightened pleading standards applicable to fraud claims. Fed. R. Civ. P. 9(b); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1023 (9th Cir. 2000); *Wood v. Apodaca*, 375 F. Supp. 2d 942, 949 (N.D. Cal. 2005). Plaintiff claims mistaken beliefs including: (1) "that all rights of way for the parcels on which Plaintiff's work would be performed had been acquired by the CHSRA and that said parcels had been delivered to DFJV"; (2) "that no work could begin on a portion of the Project until all rights of way had been obtained"; and (3) "that the design was not in flux such that the work could not start even if the rights of way were obtained, and that no design changes were contemplated affecting rights of way obtained or still needing to be obtained." Compl. at ¶ 32.

Defendant asserts Plaintiff fails to adequately allege a claim for mistake because any mistaken belief concerning the dates of delivery of ROWs and design was unreasonable given the facts disclosed in the Subcontract and Prime Contract documents. Specifically, Defendant claims the first asserted mistake of fact is contradicted by language in the Prime Contract indicating that "final ROW available for construction may differ from the ROW acquisition Plan as ROW negotiations proceed." ECF No. 18-1 at 22-23 (citing Prime Contract, § 59.1). The logic underpinning Defendant's position on this issue was rejected in large part by the May 4, 2018 Order. ECF No. 43 at 20 (finding that "[w]hile CHSRA did retain the right to modify the Prime Contract timetable to reflect issues it had obtaining ROW, the

existence of that procedural mechanism does not definitively demonstrate that at the time the Subcontract was executed CHSRA had yet to acquire ROW sufficient to permit the Subcontract to be completed within 90 days"). Similar reasoning applies here: even though CHSRA retained the right to modify the Prime Contract timetable to reflect the ROW acquisition process, this does not necessarily preclude Plaintiff's asserted belief that when DFJV entered into the Subcontract with Plaintiff, all necessary ROW had been obtained for Plaintiff to complete its work.

As to the second asserted mistake of fact, Defendant asserts that the Prime Contract "clearly states that CHSRA expected its contractors to work around ROW delays and resequence and re-schedule the work to mitigate against impacts from delayed ROW delivery." ECF No. 18-1 at 23 (citing Prime Contract, § 59.1). Again, that the Prime Contract expected DFJV to work around ROW delays does not necessarily conflict with Plaintiff's asserted belief that by the time DFJV entered into the Subcontract with Plaintiff, all necessary ROW for Plaintiff's work had been obtained.

Finally, as to the third asserted mistake of fact, Defendant points to language in the Subcontract, which clearly advised that "RFC design plans will be provided to the subcontractor when plans become available" and that the design drawings may be revised "from time to time." *Id*. (citing Subcontract, Attachment C, ¶ 5). The May 4, 2018 Order rejected a related argument, concluding that "[w]hile this language can certainly be read to disclaim the existence of completely finalized plans, this still is not in direct conflict with Plaintiff's alleged partial representation, which is based on the factual allegation that DFJV had knowledge that plans were in the process of being revised to such an extent that the representation of the Subcontract duration suggested by the timetable contained within Attachment C was grossly inaccurate." ECF No. 43 at 21. Likewise, this language is not in direct conflict with Plaintiff's asserted belief "that the design was not in flux such that the work could not start even if the rights of way were obtained, and that no design changes were contemplated affecting rights of way obtained or still needing to be obtained."

Defendant's motion to dismiss the second cause of action is DENIED.

**C.      Violation of California Business and Professions Code § 17200**

Defendant has also moved to dismiss Plaintiff's claim brought under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"). Defendant concedes that this claim is entirely derivative of Plaintiff's fraud claims. ECF No. 18-1 at 24. Therefore, because the motion to dismiss the fraud claim is denied, so too the motion to dismiss the UCL claim is DENIED.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is DENIED IN ITS ENTIRETY.

IT IS SO ORDERED.

Dated:  **June 14, 2018**                        /s/ Lawrence J. O'Neill
                                                           UNITED STATES CHIEF DISTRICT JUDGE